**FRANKEL SYVERSON PLLC**
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
602-598-4000
Ty D. Frankel (AZ#027179)
ty@frankelsyverson.com

9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
602-598-4000
Patricia N. Syverson (AZ#020191)
patti@frankelsyverson.com

**Butsch Roberts & Associates LLC**
Christopher E. Roberts (*pro hac vice* forthcoming)
7777 Bonhomme Avenue, Suite 1300
Clayton, MO 63105
Telephone: (314) 863-5700
croberts@butschroberts.com

**Kimmel & Silverman, P.C.**
Jacob U. Ginsburg (*pro hac vice* forthcoming)
30 E. Butler Ave., Ambler, PA 19002
Telephone: (267) 468-5374
jginsburg@creditlaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| David Ramirez, individually, and on behalf of others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| Schedule Viewer, LLC d/b/a Mediroutes, an Arizona limited liability company, | **[Jury Trial Demanded]** |
| Defendant. | |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff David Ramirez ("Plaintiff" or "Ramirez"), individually, and on behalf of all others similarly situated, and for his Class Action Complaint against

1

Defendant Schedule Viewer, LLC d/b/a MediRoutes ("Defendant" or "MediRoutes"), states:

## **BACKGROUND**

1.     The receipt of unwanted robocalls has been, for many years, the top consumer complaint made to state and federal agencies around the country.  This case is about stopping incessant robocallers, like Defendant, from improperly placing robocalls to the cell phones of Ramirez and likely thousands of other persons.

2.     Ramirez brings this class action lawsuit against Defendant for improperly placing prerecorded voice calls, i.e., robocalls, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and the TCPA's corresponding regulations.

3.     In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' consumers' privacy and the right to be left alone from unwanted telephone communications.

4.     A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization."  137 Cong. Rec. 30821 (1991).

5.     Defendant incessantly placed robocalls to Ramirez and the putative class members despite not having "prior express written consent," or any form of consent, to place such calls.

6.     Highlighting the problems of robocalls in this country, in March 2025 alone, approximately 4.8 billion robocalls were placed in the United States, or approximately 155 million each day. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com (last visited April 4, 2025).  The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telephone communications.  For example, while the Federal Communications Commission levied over $200 million in penalties against various companies between 2015 and 2018, it collected less than $7,000 of that amount.  *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected*

*$6,790*, The Wall Street Journal, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

7.      Ramirez seeks to represent a class of persons, who, like himself, received prerecorded voice calls from or on behalf of Defendant.

## PARTIES AND BACKGROUND ON THE PARTIES

8.      Ramirez is an individual who at all times material to this Complaint resided in Florida and has been a citizen of the State of Florida.

9.      Defendant Schedule Viewer, LLC d/b/a MediRoutes is an Arizona limited liability company and has been in good standing to transact business in Arizona and throughout the United States at all times material to this Complaint.

10.      Defendant maintains its principal place of business, head office, or otherwise valid mailing address at 2303 N. 44th Street, Suite 14-1735, Phoenix, Arizona 85008.

11.      Defendant provides a scheduling, dispatch and billing software that is designed specifically for the non-emergency medical transportation provider market.

12.      Defendant's LinkedIn profile states that Defendant's software is designed "specifically for Non-Emergency Medical Transportation (NEMT) providers."

13.      Defendant's website is www.mediroutes.com.

14.      Defendant's website states that Defendant takes "pride in our ability to revolutionize Non-Emergency Medical Transportation through our innovative cloud-based software solutions, one journey at a time."

## JURISDICTION AND VENUE

15.      This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

16.    This Court has jurisdiction over Defendant because Defendant is headquartered in Arizona, its principal place of business in Arizona, and the harms sustained by Ramirez and the putative class members that are the subject of this Complaint originated in Arizona.

17.    This Court has jurisdiction over Defendant because Defendant is headquartered in and systematically transacts business in the State of Arizona.

18.    Furthermore, Defendant maintains its headquarters within this District.

19.    For these reasons, and as set forth generally in this Complaint, this Court has personal jurisdiction over the parties to this action, and venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## **DEFENDANT INCESSANTLY PLACES ROBOCALLS TO RAMIREZ**

20.    At all times relevant to this Complaint, Ramirez owned a phone bearing the phone number 413-XXX-3686.

21.    Ramirez uses his phone primarily for personal and household purposes, including communicating with friends and family members.

22.    Ramirez did not inquire of Defendant's services or request Defendant's services.

23.    Ramirez did not sign up for transportation services with Defendant.

24.    Ramirez did not provide Defendant "prior express written consent" as that term is defined in 47 C.F.R. § 64.1200(f)(9) or any other form of consent to Defendant to call his phone.

25.    Ramirez did not and has not ever transacted business with Defendant.

26.    On October 24, 2023, Ramirez received a prerecorded voicemail from or on behalf of Defendant.  The prerecorded voicemail stated: "If you have any question regarding your transportation services, please contact us at 855-393-3009."[1]

---

[1] The prerecorded voicemails are referred to in this Complaint as "prerecorded voicemails" or "robocalls."

4

27. Ramirez knows and understands these messages were pre-recorded, rather than left by a live representative, because he received multiple recordings from Defendant and the recordings were non-interactive in nature and the tone, cadence and language was identical among various calls.

28. Upon calling the above-referenced phone number back the caller is greeted with a recording which thanks them for contacting the "MediRoutes support team."

29. Upon calling the phone number referenced in the voicemail, 855-393-3009, the caller hears a recording that states: "Thank you for contacting the MediRoutes support team. . . . MediRoutes is now including up to $150 of notifications credits every month at no additional cost. Please ask your support agent for details and how to sign up to take advantage of this benefit. . . ."

30. In addition to the above-referenced message on October 23, 2023, Ramirez also received the identical prerecorded voicemail from or on behalf of Defendant from the number 855-979-8625 on instances including but not limited to:

- October 26, 2023;
- October 31, 2023;
- November 2, 2023;
- November 7, 2023;
- November 9, 2023;
- November 14, 2023;
- November 16, 2023; and
- November 21, 2023 (seven calls).

31. In addition to the calls listed above, Plaintiff received at least five additional calls from or on behalf of Defendant between November 21, 2023 and February 2024.

32. In total, Ramirez received at least 20 of these identical prerecorded voice calls from or on behalf of Defendant. It is possible Ramirez received calls from or on behalf of Defendant in addition to these calls.

33.     Ramirez and the putative class members did not provide Defendant "prior express written consent" as defined in 47 C.F.R. § 64.1200(f)(9) or any other form of consent to Defendant to place calls to their phones.

34.     On information and belief, Defendant knew that it should not have placed calls to Ramirez and the putative class members, yet incessantly placed calls to them anyway.

35.     On information and belief, Defendant knew that it did not have "prior express written consent," or any form of consent, to place robocalls to Ramirez and the putative class members yet called them anyway.

36.     The robocalls Defendant placed to Ramirez and the putative class members were harassing, irritating, invasive and annoying.

37.     Defendant's robocalls invaded Ramirez's and the putative class members' right to privacy, namely the right to be left alone from unwanted telemarketing calls.

38.     Defendant's robocalls caused Ramirez and the putative class members to waste time and be disrupted from their daily activities, addressing and/or responding to the unwanted robocalls.

## DIRECT AND VICARIOUS LIABILITY

39.     Without having had the benefit of discovery, Plaintiff understands and alleges Defendant directly placed the subject calls.  Accordingly, Defendant is directly liable.

40.     However, in the alternative, if Defendant contracted with third-party telemarketers to place the subject calls, it is vicariously liable.

41.     On May 9, 2013, the FCC determined the outsourcing of telemarketing to third-parties was not a basis for a "seller" to avoid TCPA liability:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions.  This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable

6

to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

42.     Moreover, the May 2013 FCC ruling rejected a narrow view of vicarious liability under the TCPA, holding that a seller's liability does not require a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

43.     The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

44.     If Defendant directly placed the calls at issue to Ramirez and the putative class members, Defendant is directly liable for those calls.

45.     However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third parties who are unknown at this time as the calls only led back to Defendant and no other entity.

46.     To the extent a third party placed the calls at issue, such party or parties had actual and/or apparent authority to act on behalf of Defendant.

47.     Likewise, Defendant may have also ratified a third party's violations of the TCPA by accepting leads and deriving profit from the improper robocalls.

48.     Defendant controlled or had the right to control the activities of any potential third party.

49.     Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefiting from its agents' TCPA violations.

7

50.     For the counts identified below, if Defendant directly placed the robocalls, it is directly liable.  In the alternative, to the extent any robocalls were made by a third-party agent(s) acting on Defendant's behalf, Defendant can be held jointly and severally liable as Defendant is vicariously liable for the placing of those robocalls.

## CLASS ALLEGATIONS

51.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Ramirez brings this Complaint as a class action on behalf of himself and all others similarly situated.  This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

52.     Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Ramirez seeks to represent the following class:

> **Prerecorded Voice Call Class:**  All persons in the United States who from four years prior to the date of the filing of this lawsuit until the date of class certification to whom Defendant (or someone acting on its behalf) placed a prerecorded voice call to said person's cellular phone.

53.     Ramirez reserves the right to add classes, administrative subclasses, and/or to amend the definition of the proposed class, during the lawsuit proceedings.

54.     The members of the proposed class are so numerous that joinder of all members is impracticable.  Ramirez reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions.  The names and phone numbers of the members of the proposed class are readily identifiable through records available to Defendant or those acting on its behalf.

55.     Members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

56.     Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members.  The questions of law and fact common to the proposed class include, but are not limited to:

   a.   Whether Defendant placed prerecorded voice calls to Ramirez and the class members;

b. Whether Defendant's conduct of placing prerecorded voice calls violates 47 U.S.C. § 227(b) of the TCPA, and the TCPA's corresponding regulations;

c. Whether an agency relationship exists between Defendant and anyone placing such calls on its behalf;

d. Whether Defendant's manner and system of obtaining consumer's "prior express written consent" or any other form of consent was legally deficient; and,

e. Whether Ramirez and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

57. Ramirez's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed class and are based on the same legal theories.

58. Ramirez and his counsel will fairly and adequately protect the interests of the members of the proposed class. Ramirez's interests do not conflict with the interests of the proposed class he seeks to represent. Ramirez has retained lawyers who are competent and experienced in consumer litigation, the TCPA and class action litigation.

59. Ramirez's counsel will vigorously litigate this case as a class action.

60. A class action is superior to all alternative methods of adjudicating this controversy, including through individual lawsuits. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

9

61.    In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

62.    Questions of law and fact, particularly (and not limited to) the propriety of placing prerecorded voice calls to Ramirez and the putative class members, predominate over questions affecting only individual members.

63.    Defendant has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the proposed class.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)** *et seq.*
**(Prerecorded Voice Call Violations – Individually, and on Behalf of**
**The Putative Class)**

64.    Ramirez incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

65.    The TCPA provides, in part that: "It shall be unlawful . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) . . . (iii) to any telephone number assigned to a . . . cellular telephone . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

66.    The FCC's regulations implementing the TCPA provide that prerecorded voice calls that are placed for solicitation purposes cannot be placed without first obtaining the recipient's "prior express written consent."  47 C.F.R. § 64.1200(a)(2).

67.    The term "prior express written consent" means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called or texted advertisements or telemarketing messages using . . . an artificial or prerecorded voice. . . . and the agreement must identify the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(9).

68.    By placing prerecorded voice calls to Ramirez and the putative class members without first obtaining their "prior express written consent" (or any form of consent), Defendant violated the TCPA, 47 U.S.C. § 227(b)(1), and the TCPA's corresponding regulations.

69.    The penalty for each call placed in violation of the TCPA's restrictions on placing such prerecorded voice calls is $500 and up to $1,500 per call, if the violation is determined to be willful. *See* 47 U.S.C. § 227(b)(3).

70.    In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA. *See* 47 U.S.C. §§ 227(b)(3)(A).

71.    Defendant and/or those acting on their behalf willfully violated the TCPA when placing prerecorded voice calls to Ramirez and the putative class members' cell phones.

72.    Ramirez and the putative class members are entitled to damages of $500 per violation for each prerecorded voice call placed by Defendant and/or those acting on their behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff David Ramirez, individually, and on behalf of all others similarly situated, requests the Court grant the following relief in his favor and against Defendant:

A.    Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Ramirez as the class representative;

B.    Enter an order appointing the undersigned counsel as class counsel;

C.    Enter judgment in favor of Ramirez and the putative members for all damages and other relief available under the TCPA, 47 U.S.C. § 227(b), including injunctive relief, statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

D.  Enter a judgment in favor of Ramirez and the Class that enjoins Defendant from violating the TCPA's provisions and regulations;

E.  Enter judgment in favor of Ramirez and the Class for all applicable pre-judgment and post-judgment interest amounts;

F.  Enter judgment in favor of Ramirez and the Class for all costs; and,

G.  Award Ramirez and the Class members such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff David Ramirez demands a jury trial.

DATED:  May 8, 2025.

**FRANKEL SYVERSON PLLC**
By   s/ *Ty D. Frankel*
Ty D. Frankel
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016

**FRANKEL SYVERSON PLLC**
Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123

**Butsch Roberts & Associates LLC**
Christopher E. Roberts (*phv* forthcoming)
7777 Bonhomme Avenue, Suite 1300
Clayton, MO 63105

**Kimmel & Silverman, P.C.**
Jacob U. Ginsburg (*phv* forthcoming)
30 E. Butler Avenue
Ambler, PA 19002

*Attorneys for Plaintiff and the Putative Class*